Filed 9/23/24  Parenti v. Broadmoor Police Protection District CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| DAVID PARENTI et al.,<br><br>      Plaintiffs and Respondents,<br><br>v.<br><br>BROADMOOR POLICE<br>PROTECTION DISTRICT et al.,<br><br>      Defendants and Appellants. | A164200<br><br><br>(San Mateo County<br>Super. Ct. No. 21CIV03905) |

Eleven defendants appeal from separate orders denying their special motions to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16),[1] filed in this retaliation and discrimination lawsuit.  The plaintiffs are David Parenti; Victor Khedr; Syed Husain; and Five Points Tire Imports, Inc. (Five Points).  Parenti, Khedr and Husain are former police officers of Broadmoor Police Protection District (District), and Five Points is a corporation that contracted with the District to provide service for the District's patrol vehicles.  Khedr is also the chief executive officer of Five Points.  The plaintiffs allege multiple causes of action, including whistleblower retaliation, harassment, and discrimination.  The defendants

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

1

are the District; five District police officers; four current or former members of the District's board of police commissioners; and Michael Connolly, who was a police commissioner and then the District's chief of police. The trial court denied each defendant's anti-SLAPP motion on the grounds that the defendants failed to meet their burden to show the plaintiffs' claims arise out of protected activity. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

## I. *Parties*

### A. Defendants

The District is a public entity that employs Broadmoor police officers and conducts operations as the Broadmoor Police Department. The governing body of the District is the Broadmoor Board of Police Commissioners (Board), which consists of three elected commissioners.

Micheal Connolly was a commissioner. On May 28, 2019, Connolly was appointed chief of police and remained in that position until he resigned on June 8, 2021.

Defendants Patrick Tobin, Ronald Banta, Peter Nelson, John Duncan, and Eric Eaton are, or were, District police officers of various ranks. We refer to them collectively as the officer defendants.

Defendants Sylvia Koh, James Kucharszky, Ralph Hutchens, and Maria Brizuela are, or were, elected police commissioners. We refer to them collectively as the commissioner defendants.[2]

---

[2] Julie Dun was also named as a defendant and alleged to be an employee of the Department of Justice and the girlfriend of defendant Banta. She is not a party to the appeal.

**B.    Plaintiffs**

David Parenti is the former chief of police for the District.  He was terminated on July 20, 2020, allegedly for protected whistleblower activity. Victor Khedr and Syed Husain were part-time police officers with the District.  Khedr and Husain were allegedly unlawfully terminated on September 8, 2021.

Five Points is a corporation that operated a vehicle repair shop which serviced District vehicles.  Khedr is the chief executive officer of Five Points.

**C.    First Amended Complaint**

The first amended complaint (FAC) contains 14 pages of background facts.  We summarize those that appear relevant to plaintiffs' claims and the issues on appeal.  In November 2015, Connolly was elected to the District's Board.  In December 2018, the District's chief of police retired, and the Board appointed Parenti as District manager and authorized him to find a chief of police.  A month later, the Board appointed Parenti as chief of police. Connolly, who was chair of the Board at the time, pressured Parenti to recommend him for the chief of police position.

In March 2019, Connolly reopened an adjourned Board meeting to have the Board vote for him as chief of police, which was in violation of conflict-of-interest laws.  In May 2019, Connolly was sworn in as chief of police and Parenti remained District manager.  Connolly began to recruit his close friends as part-time reserve officers, then promoted them to command-level positions without any selection process.

Plaintiffs observed the new staff, particularly defendants Banta and Tobin, make derogatory, disparaging, and discriminatory comments regarding age, race, religion, and gender.  When Connolly was told of Banta's rhetoric, Connolly stated that was "just Banta's nature and to look past it."

3

When Tobin made offensive comments regarding a transgender officer, Connolly smirked.

District "whistleblowers, including Parenti,"[3] observed fiscal mismanagement under Connolly's management. Plaintiffs learned that the District's auditor may have had concerns about spending discrepancies of hundreds of thousands of dollars. Parenti attempted to discuss these issues with Connolly, but Connolly deflected. Parenti also discussed concerns about finances with defendant Commissioner Kucharszky.

In the spring of 2020, defendant Commissioner Koh became aware of concerns regarding District spending and low morale. On June 24, 2020, Parenti met with Commissioner Koh at her request. Parenti advised Koh that "the numbers did not add up" and that the District was in danger of insolvency. Parenti urged Commissioner Koh to request the District's "trial balance sheet," which had been withheld from the Board.

On July 1, 2020, Husain sent a public records request to the District, asking for "financials and other documents relating to the appointment of Connolly against conflict-of-interest laws." Husain sent the request anonymously through an attorney. Connolly and his "command staff" investigated the origins of the fiscal inquiry. On July 14, 2020, Connolly interrogated Khedr about the public records request and said he would fire whomever sent the request. On July 14, 2020, at a closed session of the public meeting, Parenti was accused of sending the request.

On July 19, 2020, Commissioner Koh told Parenti that Connolly would meet with him the next day to discuss the District's finances. Parenti asked

---

[3] At times, the FAC refers to "BPPD whistleblowers" without identifying them by name. It also often refers to "plaintiffs" without specifying individual plaintiffs by name.

Commissioner Koh if he was being terminated for raising the issue of the District's finances with her, and she said no.

However, on July 20, 2020, Connolly terminated Parenti for insubordination based on the reporting of potential financial discrepancies. Connolly accused Parenti of sending the public records request.

On July 20, 2020, plaintiffs, fearing retaliation, filed a whistleblower complaint with the California State Auditor's Office. On July 21, 2020, Husain and another, unnamed District officer were interrogated by Connolly. The officers discussed their concerns about the District's finances and operations. Again, Connolly expressed his suspicions of Husain and the other officer because their concerns were similar to the public records request. Connolly said the public records request was insubordination and that he would deal with the " 'key players.' " Connolly offered Husain and the other officer promotions in exchange for "making the request disappear." He also said, " '[I]f somebody stabs me in the back, I will break their arm and use that knife in unthinkable ways.' " Later, Connolly sent a text message to Husain and the other officer saying that his statements " 'came out wrong' " and that " 'there are some . . . who are trying to remove me . . . and I am . . . sensitive to that.' "

On August 10, 2020, Husain filed a complaint with the Fair Political Practices Commission (FPPC), alleging Connolly violated Government Code section 1090 by using his elected position as commissioner to appoint himself police chief. Husain was harassed and retaliated against by the District. On September 24, 2020, the FPPC sent a letter to Husain, copied to Connolly, stating it was investigating Husain's allegations.

5

On October 13, 2020, defendant Tobin stated at a public Board meeting that the county counsel should allow him to do his job and fire the District's whistleblowers. Tobin also took a closefisted swing at Khedr.

On November 13, 2020, defendant Commissioner Koh resigned from the Board and referred to the growing intensity of the public meetings due to the whistleblowers' allegations and grievances.

On February 26, 2021, Tobin ordered Khedr to appear for an " 'administrative inquiry' " at 7:30 p.m. that Friday evening. Tobin would not tell Khedr the purpose. Khedr said he could not attend due to a religious obligation and because he wanted time to consult with his attorney. Khedr, who is Jewish and observes Shabbat on Friday evenings, believes the timing of the meeting was chosen to target him due to his religion. Tobin and Connolly punished Khedr by placing him on administrative leave that day. Khedr was ordered to return department property and forced to do so at a time to publicly humiliate him.

On March 8, 2021, Husain sent a cure or correct complaint to the Board for violations of the Ralph M. Brown Act (Gov. Code, § 54950 et seq.).[4] On March 9, 2021, Tobin advised Husain he was being placed on administrative leave. He too was forced to come into the District building to return department property, which publicly humiliated him. Connolly then sent an email to the entire police department stating that Husain was on administrative leave and under investigation.[5] During the internal investigation interview,[6] Husain was questioned regarding where he obtained

---

[4] The FAC does not provide any detail regarding the "cure or correct complaint."

[5] The FAC does not explain the basis for the investigation.

[6] The FAC does not state who conducted the interview.

6

documents that were given to the Board and a recording that was given to the FPPC. The District claimed Husain violated the technology policy by accessing the documents. Khedr and Husain were placed on administrative leave for their attempts to exercise their lawful rights.

On June 8, 2021, Connolly resigned from the District because of anticipated criminal charges for using his position as commissioner to appoint himself chief of police. The commissioners expressed disappointment that Connolly was resigning. Commissioner Hutchens stated, " 'I think we have had a big loss here [. . .] over an unintentional mistake that was pushed outrageously, and I don't like it.' "

On June 17, 2021, the San Mateo District Attorney charged Connolly with two counts of violation of Government Code section 1090 and one count of violation of Government Code section 87100.[7] The charges were based on the conduct alleged in Husain's complaint to the FPPC.

On July 13, 2021, just prior to the start of a public Board meeting, Commissioner Kucharszky stated to the public, "[T]hese two non-taxpayers are costing the district money—those two right there," referring to Khedr and Husain. Commissioner Hutchens continued targeting Khedr and Husain and indirectly blaming them for the rising costs to operate the District.

On August 2, 2021, Connolly pleaded nolo contendere to violating Government Code section 87100 by using his official position to influence a

---

[7] Government Code section 1090 states that public officers or employees "shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." Government Code section 87100 prohibits public officials from making, participating in making, or using their position to influence a governmental decision in which they have a financial interest.

government decision. On September 8, 2021, Banta sent termination notices to Khedr and Husain.[8] The notices were signed by Tobin.

The FAC alleges 15 causes of action. Many of the causes of action are alleged by all four plaintiffs against all 12 defendants and often contain general allegations of conduct by "Defendants" without specifying any one individual. The causes of action asserted by all plaintiffs against all defendants are: (1) whistleblower retaliation (Lab. Code, § 1102.5; Gov. Code, § 53296 et seq.); (2) harassment; (3) hostile work environment; (4) failure to prevent harassment; (5) violation of the Tom Bane Civil Rights Act (Civ. Code, § 52.1);[9] (6) invasion of privacy; (7) intentional infliction of emotional distress; and (8) equitable and injunctive relief (Lab. Code, §§ 1102.61–1102.62; Gov. Code, § 3309.5).

The FAC alleges the following causes of action by all plaintiffs against the District: (1) retaliation in violation of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.); (2) wrongful termination in violation of public policy; (3) discrimination; and (4) negligent hiring, supervision, or retention of an employee. All plaintiffs also allege a cause of action for declaratory relief against the District and Connolly. Plaintiffs Husain and Khedr allege a cause of action for recovery of unpaid minimum

---

[8] The FAC states the notices were sent to "Plaintiffs and Khedr." This is one of many instances in which the FAC uses imprecise language. The respondents' brief states that the September 8, 2021, notices were sent to Khedr and Husain. Given that plaintiff Parenti was terminated on July 20, 2020, and that Five Points is a corporate entity, we understand the allegation to refer to Khedr's and Husain's terminations.

[9] The Tom Bane Civil Rights Act authorizes an individual to sue a defendant who interferes with or attempts to interfere with the individual's constitutional or statutory rights by threats, intimidation, or coercion. (Civ. Code, § 52.1.)

8

wages against the District. Finally, Five Points alleges breach of contract against the District.

### D. Defendants' Anti-SLAPP Motions

The defendants filed individual motions under section 425.16 seeking to strike the majority of the causes of action asserted against them.[10] The trial court denied each of the motions in 11 separate orders. Each order differs depending on the arguments made by each defendant, but the trial

---

[10] This appeal involves 11 appellants. They are represented by the same counsel. However, they filed four opening briefs: one on behalf of the District, one on behalf of Connolly, one on behalf of the officer defendants, and one on behalf of the commissioner defendants. Each of the opening briefs includes subheadings for "procedural history" and "challenged causes of action." Within these sections, the defendants purport to clarify exactly which causes of action they challenged below. However, they fail to include record citations in these sections of their briefs directing this court to their motions. Particularly in a multi-party case involving appeals from 11 separate motions, defendants' failure to consistently include record citations to the arguments made below by each defendant frustrates our ability to review the issues raised. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 97, fn. 2 ["Each and every statement in a brief regarding matters that are in the record on appeal, whether factual or procedural, must be supported by a citation to the record. This rule applies regardless of where the reference occurs in the brief"];*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 290 ["The duty to adhere to appellate procedural rules grows with the complexity of the record"].) Respondents filed a single respondents' brief, which includes a discussion of the procedural background stating that the defendants' 11 separate anti-SLAPP motions collectively sought to strike 11 enumerated causes of action. The respondents' brief provides a block citation to hundreds of pages of the clerk's transcript containing the 11 anti-SLAPP motions, opposition briefs, and reply briefs. Block citations do not comply with California Rules of Court, rule 8.204(a)(1)(C), and do not assist this court in evaluating the issues on appeal. (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 611.) We will rely upon the trial court's summary of the parties' arguments contained in the trial court's 11 orders denying the anti-SLAPP motions.

court found that none of the defendants met their burden under the first prong of the anti-SLAPP statute to show that the causes of action against them arise out of protected activity.

## DISCUSSION

### I.    *Anti-SLAPP Statutory Framework*

Section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)  The statute is "designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).)

"A court evaluates an anti-SLAPP motion in two steps.  'Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.  [Citations.]  If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit." '  [Citation.]" (*Wilson, supra*, 7 Cal.5th at p. 884.)  Both prongs of the anti-SLAPP statute must be satisfied for a claim to be struck under the statute.  (*Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1159.)  If a court finds the defendant has not satisfied the first prong, it must deny the motion and there is no need to consider the second step.  (*Ibid.*)  We review the denial of a special motion to strike de novo.  (*Ibid.*)  However, our de novo review does not relieve defendants of their duty to present reasoned arguments supporting their

10

position that their anti-SLAPP motions should have been granted. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

A "claim arises from protected activity when that activity underlies or forms the basis for the claim . . . . [T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . ." ([Citation], italics added.) In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062–1063, 1st bracketed insertion added (*Park*).)

Section 425.16, subdivision (e) defines " 'act[s] in furtherance of a person's right of petition or free speech . . . in connection with a public issue' " to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

11

We summarize *post* the trial court's rulings on the motions of each group of defendants and evaluate their arguments on appeal.

## II.   *Officer Defendants' Anti-SLAPP Motions*

Officers Nelson, Duncan, Eaton, Banta and Tobin's joint opening brief states that they each filed motions arguing that the following causes of action arise out of protected activity:  the first cause of action for whistleblower retaliation, the fourth cause for harassment, the fifth cause of action for hostile work environment, the sixth cause of action for failure to prevent harassment, the eighth cause of action for violation of the Tom Bane Civil Rights Act, the ninth cause of action for invasion of privacy, the 11th cause of action for intentional infliction of emotional distress, and the 15th cause of action for injunctive relief.  We summarize the trial court's rulings on each motion.

### A.   Trial Court's Orders

#### 1.   Nelson

The trial court's order denying Nelson's motion explains that Nelson asserted the only allegation against him in the FAC is that he contacted plaintiffs' friends as part of an investigation.  Specifically, the FAC alleges that "Defendant Nelson then contacted friends of Plaintiffs under the guise of official police business to create the nexus for a new investigation despite having no legitimate jurisdiction."[11]  The trial court's order addressed the fact that Nelson acknowledged the FAC did not contain any specific allegations by Parenti and Five Points against him, then found that Nelson failed to establish that Parenti and Five Points's claims arise from protected activity.

_____

[11] The officer defendants' opening brief cites to a declaration Nelson filed in support of his anti-SLAPP motion explaining that he investigated missing guns and that as part of the investigation he sent written communications to certain individuals.

12

Regarding the remaining plaintiffs (Husain and Khedr), the trial court found that Nelson failed to address how the investigation he conducted underlies each of plaintiffs' claims and, thus, he did not meet his initial burden under the anti-SLAPP statute.

### 2.    Banta

The trial court's order denying Banta's motion states that Banta moved to strike all causes of action alleged against him on the grounds that they arise from allegations that he investigated guns missing from the District and that he investigated misappropriation of funds donated by an unnamed District employee. The FAC alleges that after Khedr expressed concerns about the District's sale of firearms, "[t]o deflect the potential for the improper sale of firearms to come back to the [District] command staff, Banta fabricated a basis for an investigation into 'ghost' guns." Banta also initiated a separate investigation into misappropriation of funds donated by another member of the District "close to Plaintiffs." The FAC further alleges that Banta told Khedr that search warrants would be executed against Khedr and that if Khedr and the other plaintiffs "came on their side, withdrew any inquiry into mismanagement and misconduct, all of this could go away." The trial court again found that Banta acknowledged that as to two of the plaintiffs (Parenti and Five Points), the FAC did not include specific allegations by them against Banta and the trial court declined to find that Parenti's and Five Points's claims against Banta must necessarily arise out of the investigations. It further found that Banta failed to address how the referenced investigations underlie the plaintiffs' claims and, thus, he failed to meet his first prong burden to establish that the plaintiffs' claims arose out of protected activity.

13

### 3. Eaton

The trial court's order quotes the only allegation in the FAC alleging specific conduct by Eaton, which states: "On or around February 28, 2021, Husain who was not under any noticed disciplinary action, went to the BPPD station to qualify with his department firearm. He noticed his ammunition was switched, posing a safety threat. Further, Husain noticed Defendant Eaton keeping a watchful eye on him everywhere in the station, including the locker room. At the same time Eaton was actively text messaging somebody and immediately hiding his phone after. When Husain advised Eaton, who is his supervisor, of his discomfort and if there is something Eaton would like to discuss. [*Sic*.] Eaton declined. Husain then called Duncan, the next level supervisor. Both Eaton and Duncan failed to address Husain's concerns and oral grievance." (Boldface omitted.) Eaton submitted a declaration stating that he observed Husain insert a USB thumb drive into a District computer and take documents and that he observed Husain photographing documents. Eaton reported the conduct to Duncan and Connolly. Husain confronted Eaton about reporting him, and Eaton said he did not want to get involved with " 'what [he] had going on with the District.' " The District ultimately investigated the conduct Eaton reported. The trial court found that even if Eaton's alleged conduct constitutes protected activity, Eaton failed to show that plaintiffs' causes of action arise out of such activity. Citing *Park, supra*, 2 Cal.5th at page 1060, the trial court found that "Eaton's blanket and conclusory assertion that Plaintiffs' claims arise from his protected activity is insufficient to satisfy his burden under the anti-SLAPP statute since he fails to establish any connection between Plaintiffs' claims and his alleged conduct."

14

### 4. Tobin

The trial court's order denying Tobin's motion states that Tobin argued the claims against him should be struck because they arise from investigations and comments Tobin made at a Board meeting. The FAC alleges that Tobin placed Khedr on administrative leave in February 2021 and he placed Husain on administrative leave in March 2021. The FAC also alleges that on October 13, 2020, at a public Board meeting, Tobin stated that "the county counsel should allow him to do his job and fire the District's whistleblowers" and that Tobin "took a closed fisted [*sic*] swing at Khedr" at the same meeting. The trial court again found that Tobin acknowledged that as to two of the plaintiffs (Parenti and Five Points), the FAC did not include specific allegations by them against Tobin, and the trial court declined to find that Parenti's and Five Points's claims against Tobin must necessarily arise out of the allegations regarding Khedr and Husain. It further found that even assuming the specific allegations referencing Tobin constituted protected activity, Tobin failed to address what act or acts underlie each of the plaintiffs' claims and, thus, he failed to meet his burden to establish that the challenged causes of action arise from protected activity.

### 5. Duncan

The trial court's order denying Duncan's motion summarizes his argument that the plaintiffs' claims arise solely out of the allegations in the FAC regarding Duncan's February 28, 2021, interaction with Husain, when Husain expressed his discomfort regarding Eaton's watching him and neither Eaton nor Duncan addressed Husain's concerns. The order further refers to Duncan's declaration stating that Eaton reported to Duncan that he saw Husain acting " 'suspiciously' " and photocopying documents, Duncan reported the conduct to Connolly, and the District investigated Husain.

The trial court found that Duncan's communication with Connolly was protected activity because it was in anticipation of bringing an internal investigation of a public employee. However, it further found that the FAC does not mention Duncan's communication with Connolly and, thus, Duncan failed to satisfy prong 1 of the anti-SLAPP analysis based on his communications with Connolly. The trial court also rejected Duncan's argument that his communications with Husain on February 28, 2021, are protected activity because they were in anticipation of an internal investigation. The trial court found that the FAC only alleges that Husain complained to Duncan and Duncan allegedly " 'failed to address Husain's concerns and oral grievance.' " Duncan's declaration did not mention communications he had with Husain, and thus the trial court found it was unable to determine whether Duncan was acting " 'in furtherance of [his] right of petition or free speech . . . in connection with public issue [*sic*] . . . ."[12]

The trial court also found that even if the FAC's allegations referencing Duncan were protected activity, Duncan failed to establish that those allegations were the basis for each of the eight challenged causes of action. It concluded that "Duncan's blanket and conclusory assertion that Plaintiffs' claims arise from the allegations against him in paragraph 75 of the FAC is insufficient to satisfy his burden under the anti-SLAPP statute since he fails to establish any connection between Plaintiffs' claims and the allegations at

---

[12] The officer defendants' opening brief cites to declarations of Duncan, Tobin, and Connolly, in which they provide "contextual information" regarding Duncan's conversation with Husain. The appellate record contains only redacted copies of the declarations. It is the appellants' duty to provide an adequate record for appellate review. (*In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 498.) We base our review on the trial court's description of the declarations and the summary of their contents contained in the officer defendants' opening brief.

16

issue. (See *Park v. Board of Trustees of Calif. State Univ.* (2017) 2 Cal.5th 1057, 1060 [there must be a 'nexus . . . between a challenged claim and the defendant's protected activity for the claim to be struck']; [citation].)"

## B. Officer defendants fail to establish that the challenged causes of action arise from protected activity.

The officer defendants argue that the trial court erred by requiring them to specify " '[h]ow' " the plaintiffs' allegations of protected activity were the basis for the challenged causes of action. (Boldface omitted.) They claim that such a requirement goes to the merits of the challenged claims, which is analyzed at the second step of the anti-SLAPP requirement. According to the officer defendants, they carried their first prong burden because they identified allegations of protected activity, which were the only allegations specifically naming them, and therefore this necessarily means the challenged causes of action arise from the protected activity. The officer defendants' argument is conclusory and incorrect. It glosses over the " 'arising from' " requirement of their prong 1 burden. (*Park, supra*, 2 Cal.5th at p. 1062.)

Even assuming the allegations the officer defendants highlight[13] constitute protected activity, they have not established that the multiple challenged causes of action against them arise out of the alleged protected activity, and it is indeed their burden to demonstrate a "nexus" between the challenged claim and the defendants' protected activity. (*Park, supra*, 2 Cal.5th at pp. 1060, 1062–1063.)

---

[13] The officer defendants' opening brief acknowledges that there are other allegations referencing certain of them, but they claim the only relevant allegations for purposes of the anti-SLAPP motions are the portions of the FAC regarding the internal investigations and comments at meetings. This further suggests that the officer defendants' motions provided an incomplete analysis of the allegations.

As explained in *Park*, a claim does not arise out of protected activity, "simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra*, 2 Cal.5th at p. 1060.) *Park* held that a plaintiff's claim that he was denied tenure at a public university due to national origin discrimination was based on the act of denying tenure and not on the grievance proceeding or statements made during the university's evaluation of him. (*Id.* at p. 1068.) The fact that the tenure decision was communicated did not convert the plaintiff's discrimination suit into a suit arising from protected speech. The comments of the university dean may be evidence of animus, but the statements themselves were not the basis for the claim. (*Ibid.*)

*Park* further explained that " '[t]he only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . .' [Citation.] In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra*, 2 Cal.5th at p. 1063.)

The officer defendants fail to meet their burden. They provide no analysis of the elements of each challenged cause of action; nor do they demonstrate the required nexus between protected activity and the challenged claims. They have not provided a reasoned analysis to support

18

reversal of the trial court's orders. (*Allen v. City of Sacramento, supra*, 234 Cal.App.4th at p. 52 ["We are not required to examine undeveloped claims or to supply arguments for the litigants"].) Instead, they argue in a summary fashion that the only specific allegations referencing them are protected activities and therefore this "necessarily means that Plaintiffs' causes of action against [them] arise from those protected activities and shifts the burden to Plaintiffs to prove a probability of success on the merits . . . ." The officer defendants cite no authority for this conclusory argument, and we find it is contrary to *Park* and insufficient to meet defendants' prong 1 burden.

Although the officer defendants ignore the elements analysis discussed in *Park*—and we will not fill that void—we read the FAC as primarily alleging that the plaintiffs were retaliated against and subjected to adverse employment actions, including, ultimately, termination, after they reported concerns about financial improprieties and misconduct that led to Connolly's resignation and his criminal conviction. The fact that they were put on administrative leave and subject to internal investigations leading up to their terminations does not appear to be the basis for their retaliation claims. (*Park, supra*, 2 Cal.5th at pp. 1060, 1068.) The plaintiffs' allegation that the internal investigations were examples of adverse employment actions taken against them after they reported misconduct does not help defendants. (See *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 776–777 [retaliation claim based on university's pursuing allegedly meritless investigations does not arise from any act in furtherance of university's right of petition or free speech].)

As *Park* explains, in evaluating prong 1 of the anti-SLAPP analysis, we must "respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide

19

evidentiary support for the claim." (*Park, supra*, 2 Cal.5th at p. 1064.) The officer defendants' argument fails to make this distinction and instead asks us to simply assume that because the FAC includes allegations that they were involved in internal investigations and made comments at public meetings that all of the challenged causes of action arise from protected activity. This we will not do.

The officer defendants include as part of their prong 1 argument that they, as individual defendants, cannot be liable for retaliation, discrimination, or adverse employment actions. They assert that such claims are viable only against the employer. While these arguments may provide a basis for demurrer, they do nothing to meet the officer defendants' prong 1 burden under the anti-SLAPP statute.

We agree with the officer defendants that the FAC is vague in many respects and that at least some of the causes of action may not state a claim as to at least some of the defendants. However, while some or all of the challenged causes of action may be subject to demurrer, the officer defendants have not established that they must be struck under the anti-SLAPP statute. (See *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 627–628 [recognizing that defendant may not be able to meet prong 1 burden when complaint lacks specificity and may not withstand demurrer; however, anti-SLAPP statute does not provide for skipping defendant's first prong burden].)

## III. *Connolly's Anti-SLAPP Motion*

### A. Trial Court Order Denying Connolly's Anti-SLAPP Motion

The trial court's order states that Connolly moved to strike the plaintiffs' first cause of action for whistleblower retaliation, fourth cause of action for harassment, fifth cause of action for hostile work environment,

sixth cause of action for failure to prevent harassment, eighth cause of action for violation of the Tom Bane Civil Rights Act, ninth cause of action for invasion of privacy, 11th cause of action for intentional infliction of emotional distress, 14th cause of action for declaratory relief, and 15th cause of action for equitable and injunctive relief. The order explains that Connolly argued all contested causes of action primarily arise from his directing the District's investigations. Specifically, Connolly asserted that he directed Tobin to audit the District's finances, which revealed mismanagement by Parenti, and to investigate Husain's use of the District's computer, which resulted in Husain being placed on administrative leave. Connolly further asserted that he directed Banta to investigate and audit the District's armory, which resulted in Khedr being placed on administrative leave.

The trial court's order first noted that protected activity under section 425.16 includes statements made in connection with official proceedings authorized by law and that an internal investigation of a public employee is an official proceeding. It then rejected Connolly's argument that any claims against him asserted by Five Points must necessarily arise out of the internal investigations directed by Connolly. Connolly acknowledged that there are no specific allegations by Five Points against Connolly. Thus, the trial court found that Connolly failed to show that Five Points's claims " 'arise from' " an investigation.

The trial court further found that Connolly failed to meet his burden to show that the other plaintiffs' claims " 'arise from' " protected activity. Instead, Connolly "simply concludes that all of Plaintiffs' claims are primarily based on the investigations" without "address[ing] how these investigations underlie each of Plaintiffs' claims." The order noted that the FAC seems to lack factual allegations to support the elements of its claims and that the

21

claims confusingly refer to "Plaintiffs" and "Defendants" rather than specifying which of the four plaintiffs and 12 defendants are involved in each claim. Although the trial court acknowledged there may be pleading defects in the FAC, it was "not convinced that the fact that the [FAC] contains allegations that [Connolly] directed investigations means that all of Plaintiffs' claims necessarily arise from these investigations . . . ."

### B. Connolly fails to establish that the challenged causes of action arise from protected activity.

On appeal, Connolly makes similarly imprecise and conclusory arguments. His opening brief devotes fewer than three pages to his argument that Husain, Khedr, and Parenti's claims arise out of protected activity. He asserts that the relevant allegations against him are that he placed Khedr and Husain on administrative leave and communicated to others that they were on leave. He argues that internal investigations are protected activities and because the plaintiffs reference investigations in the FAC, and incorporate by reference the FAC's background factual allegations into each cause of action, their claims all arise out of protected activity. Connolly's argument only specifically mentions allegations involving investigations of Khedr and Husain but then concludes, without any analysis, that Parenti's claims also arise out of protected activity.

Connolly's statement that internal investigations are protected activity under the anti-SLAPP statute is overbroad. "[T]he anti-SLAPP statute protects speech and activity taken in connection with an official proceeding, but not necessarily the decisions made or actions taken as a result of those proceedings." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1014 (*Bonni*).) Connolly argues that the investigation itself is the protected activity, without specifying what speech or petitioning activity he engaged in regarding the investigations other than to communicate the decision to place

plaintiffs on leave. His argument fails to recognize the distinction, explained in *Park*, between adverse decisions and protected speech relating to the adverse decisions. (*Park, supra*, 2 Cal.5th at pp. 1062–1063.) Even if we were to assume the overall internal investigations of plaintiffs are protected activity, we would still find that Connolly failed to meet his prong 1 burden.

The overriding problem with Connolly's argument is that he, similarly to the officer defendants, fails to demonstrate that any of the investigations referenced in the FAC are the basis for plaintiffs' claims. He does not identify the elements of any of the causes of action asserted against him and explain how the alleged protected activity forms the basis for the plaintiffs' claims. It is not enough for Connolly to merely reference various mentions of internal investigations in the FAC. To meet his first prong burden, he must show that "the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra*, 2 Cal.5th at p. 1060.) As explained in *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621, "a claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim."[14] Moreover, "the existence of an official proceeding does not necessarily transform any claim related to that

---

[14] Connolly relies on *Jeffra v. California State Lottery* (2019) 39 Cal.App.5th 471 for support for his assertion that the internal investigations and acts that are " 'inextrably tied' " to the investigation are protected conduct under the anti-SLAPP statute. As the court in *Verceles v. Los Angeles Unified School Dist.* (2021) 63 Cal.App.5th 776, 787–788, noted, *Jeffra* did not identify any written or oral statement made in connection with the official proceeding that formed the basis of the plaintiff's claim. (*Jeffra, supra*, 39 Cal.App.5th at pp. 482–483.) Thus, *Jeffra*'s analysis conflicts with *Park*. We decline to follow *Jeffra*.

proceeding into an action within the ambit of section 425.16, subdivision (e)(2). Such an interpretation ignores the plain language of the statute, which requires a claim be based on a written or oral statement made in connection with the proceeding." (*Verceles v. Los Angeles Unified School Dist., supra*, 63 Cal.App.5th at p. 787.)

The FAC is far from a model of clarity, and we agree with the trial court's comments that it may be subject to demurrer. However, the issue before us is whether Connolly has demonstrated that the plaintiffs' claims arise from protected activity. He has not met his burden to establish that each of the challenged causes of action alleged against him arise from protected activity. (*Park, supra*, 2 Cal.5th at p. 1063; see *Bonni, supra*, 11 Cal.5th at pp. 1023–1024 [finding defendant failed to meet prong 1 burden when it did not establish that general allegations of hostile work environment and failure to protect from retaliation arose from protected activity].)

Nor has Connolly persuaded us that Five Points's claims against him arise out of protected activity. Although the FAC imprecisely asserts multiple causes of action on behalf of all plaintiffs, which include the individual plaintiffs and the corporate entity, Five Points, the only specific references to Five Points in the FAC are where it is identified as a corporation and in the 12th cause of action for breach of contract against the District. Connolly states that Five Points cannot prevail on the other causes of action, which are employment-related claims, but he nonetheless claims they necessarily arise out of protected activity. We agree with the trial court that accepting Connolly's argument regarding Five Points would require that we read into the FAC conduct by Five Points that is not alleged. This would

amount to an improper redrafting of the FAC. (*Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 621.)

## IV. *Commissioners' Motions*

Commissioners Kucharszky, Hutchens, Koh and Brizuela's joint opening brief states that they each sought to strike the following causes of action: the first cause of action for whistleblower retaliation, the fourth cause of action for harassment, the fifth cause of action for hostile work environment, the sixth cause of action for failure to prevent harassment, the eighth cause of action for violation of the Tom Bane Civil Rights Act, the ninth cause of action for invasion of privacy, the 11th cause of action for intentional infliction of emotional distress, and the 15th cause of action for injunctive relief. We summarize the trial court's rulings on each motion.

### A. Trial Court's Orders

#### 1. Hutchens

The trial court's order states that the only allegations in the FAC specifically mentioning Hutchens are in paragraphs 82, 85, 86, 89 and 128. The trial court found that the references in paragraphs 86, 89 and 128 do not describe protected activity under the anti-SLAPP statute.[15] Paragraph 86 refers to Hutchens's comment prior to a public Board meeting that Khedr and Husain were " 'costing the district money' . . . ." Paragraphs 89 and 128 allege that all commissioners were motivated to cover up conflict-of-interest violations and do not reference any speech or petitioning activity.

---

[15] The order appears to misstate that the allegations in these paragraphs "do describe protected activity," but the very next sentence states: "They contain no allegations that Hutchens engaged in enumerated activities protected under the anti-SLAPP statute." When read in context, it is clear that the trial court found the allegations of paragraphs 86, 89 and 128 are not protected activity.

Paragraph 82 alleges that "Defendant Hutchens went as far as to state on the record, 'I think we had a big loss here [. . .] over an unintentional mistake that was pushed outrageously, and I don't like it.' Hutchens, the Treasurer of the Board, negligently managed the funds of the BPPD without any oversight." Paragraph 85 alleges, "On or around June 23, 2021, Hutchens during an open Special Meeting expressed 'sadness and heartbreak' for Connolly having to leave. Despite Connolly's formal criminal charges only days prior, Hutchens inquired if something can legally be done to change the outcome of Connolly's leave." The trial court found that the allegations in paragraphs 82 and 85 appear to have occurred in the context of public meetings and therefore constitute protected activity under section 425.16, subdivision (e)(1). However, it found that Hutchens failed to establish any connection between the referenced allegations and any element of the challenged causes of action, as required under *Park*. Instead, Hutchens merely identified the alleged protected activity and then generally concluded that all of the challenged causes of action arise out of the protected activity.

### 2.　Koh

The trial court's order refers to allegations specifically referencing Koh contained in paragraphs 45, 46, 47, 52, 53, 54, 72, 89, 128 and 130. It found that only the allegations of paragraph 130 may constitute protected activity.[16]

---

[16] The trial court found that the remaining allegations referring to Koh do not appear to constitute protected activity. Those allegations are paragraphs 45–47, referring to Koh's learning of concerns regarding District spending, Parenti's meeting with Koh and advising her about the District's finances, and Koh's allegedly asking for the "trial balance sheet"; paragraph 52, alleging that Koh told Connolly that Parenti reported "information about the discrepancies"; paragraph 53, alleging Koh contacted Parenti to tell him he would be meeting with Connolly to discuss finances

Paragraph 130 alleges, "Upon the resignation of Koh from the Police Commission in November 2020, she acknowledged the existing grievances of officers submitted to the Commission. Koh's resignation dated November 13, 2020, stated '[t]here are grievances and anticipated litigations concerning the district, and I am committed to investigating and addressing them accordingly. However, as a result of these allegations, the public in-person meetings have grown more intense and even borderline physical (as seen in the October public meeting). Frankly, I am uncomfortable with facilitating these in-person meetings in this type of environment.' Koh, the Chair of the Board at the time, had the discretion to maintain order, and to further order her subordinates, including Connolly, to cease this behavior. She elected not to and instead resigned, thereby allowing the harassment to continue unchecked." The trial court found that although Koh's resignation letter could qualify as protected activity, Koh failed to establish any nexus between the protected activity and any elements of the challenged causes of action, as required by *Park*.

### 3. Kucharszky

The trial court's order states the only allegations specifically mentioning Kucharszky are in paragraphs 43, 52, 80, 86 and 89. It found that the allegations in paragraphs 43, 52 and 89 do not appear to constitute protected activity.[17] Paragraph 80 alleges that Kucharszky made statements

_____

and assured Parenti he was not being terminated; paragraph 54, alleging Connolly terminated Parenti "[d]espite Koh's assurance"; paragraph 72, alleging Koh resigned from the Board citing the intensity of the in-person Board meetings; and paragraphs 89 and 128, alleging that all commissioners were motivated to cover up conflict-of-interest violations.

[17] Paragraph 43 states, in relevant part, "Out of concern over the lack of transparency with the District's finances, Parenti also discussed concerns about the finances with Defendant Kucharszky." Paragraph 52 states, in

at a public Board meeting that the District's finances "had never been better . . . ." Paragraph 86 alleges that prior to a public Board meeting on July 13, 2021, Kucharszky stated to the public that Khedr and Husain were costing the District money. The trial court found that the allegations of paragraphs 80 and 86 constitute protected activity under section 425.16, subdivision (e)(1). However, Kucharszky failed to establish any nexus between the alleged protected activity and the challenged causes of action, as is his burden under *Park*. Instead, he merely identified the protected activity and generally concluded, without analysis, that the challenged causes of action arise out of the protected activity.

### 4. Brizuela

The trial court's order states that the only allegation specifically mentioning Brizuela is in paragraph 74 of the FAC. Paragraph 74 alleges that on February 26, 2021, Tobin ordered Khedr to appear for an " 'administrative inquiry' " that Friday evening, at which time Khedr observed Shabbat. It further alleges, "The BPPD commissioners, including Defendant Brizuela who was a private citizen at the time, also appeared to be involved in the punitive action." (Boldface omitted.) The trial court found that the allegation referring to Brizuela did not identify any acts committed by her and therefore she was unable to identify any protected activity under the anti-SLAPP statute. It refused to assume that Brizuela's alleged unidentified involvement in placing Khedr on leave constitutes protected speech or petitioning activity.

---

relevant part, "Both Koh and Kucharszky told Connolly that Parenti reported information about the discrepancies." Paragraph 89 alleges that the commissioners were motivated to cover up conflict-of-interest violations.

28

**B.    Commissioner defendants fail to establish the challenged causes of action arise from protected activity.**

The commissioner defendants argue that the only allegations against them are either that they made comments during Board meetings (Hutchens) and/or that they investigated complaints of financial mismanagement (Koh, Kucharszky). They argue that because the only allegations specifically referring to them are of protected activity, the challenged causes of action must arise out of the protected activity. Commissioner Brizuela's argument is even more conclusory. She claims that the allegation against her is that she was involved in the same actions as other Board members and because the allegations against the other Board members involved protected activity, the claims against Brizuela must also arise out of protected activity.

As with the officer defendants and Connolly, the commissioner defendants also fail to establish that the challenged causes of action arise out of protected activity. Instead, they simply assert that the only allegations specifically mentioning them constitute protected activity and therefore all of the challenged causes of action must necessarily arise out of the alleged protected activity. The commissioner defendants provide no analysis or authority to support their position that a defendant may establish that a claim "arises from" protected activity by simply identifying allegations of protected activity. For the reasons explained *ante* regarding the officer defendants and Connolly, this is insufficient to meet the commissioner defendants' prong 1 burden.

## V.    *District's Motion*

The District moved to strike certain causes of action asserted against all defendants and others asserted only against the District. The following challenged causes of action were asserted against all defendants:  the first cause of action for whistleblower retaliation, the fourth cause of action for

harassment, the fifth cause of action for hostile work environment, the sixth cause of action for failure to prevent harassment, the eighth cause of action for violation of the Tom Bane Civil Rights Act, the ninth cause of action for invasion of privacy, and the 11th cause of action for intentional infliction of emotional distress.[18]  The challenged causes of action asserted only against the District are:  the seventh cause of action for discrimination; the 10th cause of action for negligent hiring, supervision, or retention of an employee; and the 14th cause of action for declaratory relief.

## A.    Trial Court's Order Denying District's Motion

As to the causes of action that were asserted against the District and other defendants, the trial court denied the motion on the same grounds it denied the motions of the individual defendants.  The trial court then addressed the three challenged causes of action pleaded only against the District.  It summarized the allegations of the seventh cause of action for discrimination, which include that Tobin, Banta, and Connolly were " 'amused' by unspecified 'derogatory language' of others"; Connolly, Tobin, and Banta " 'convinced' staff and Commissioners 'to behave negatively' toward Plaintiffs"; Connolly, Banta, and Tobin " 'took issue' with persons of middle-eastern descent, while non-middle eastern whistleblowing officers were not publicly humiliated or placed on leave"; Connolly asked Husain about his religion for reasons unrelated to employment; the District initiated investigations into Husain because of his protected activity and ordered him

_____

[18] The trial court's order denying the District's motion also references the 15th cause of action for injunctive relief.  However, the District's opening brief does not include the 15th cause of action in its discussion of the challenged causes of action; nor does it provide a citation to the District's motion in the clerk's transcript.  Therefore, we will not discuss the 15th cause of action.

to appear for interrogations on dates conflicting with his religion; Khedr was asked by an unidentified person about his religion and ethnicity for reasons unrelated to his employment; Tobin ordered Khedr to appear for an administrative inquiry during Jewish Shabbat and then placed Khedr on leave for failing to appear; Connolly made " 'comments' " regarding Parenti's age and surgery, which was not employment-related. The trial court found that none of the allegations refer to conduct or communications that constitute protected activity under section 425.16.

The trial court summarized the 10th cause of action for negligent hiring as based on allegations that the District (1) failed to investigate Connolly, Tobin, Banta, Nelson and others before hiring them; (2) retained them after learning they were purportedly unfit; and (3) failed to adequately supervise them. It then found that the District made no argument supporting the contention that a failure to act is a protected activity under the anti-SLAPP statute; nor did the District identify any statutorily protected act that is the basis for the negligent hiring claim.

The trial court's order further found that the District failed to establish that the 14th cause of action for declaratory relief arises from protected activity. The court explained that the declaratory relief cause of action includes 26 paragraphs of unconnected allegations and conclusions and then concludes, " 'A judicial determination of these issues is necessary and appropriate at this time because of the circumstances and controversies related to the issues.' " However, the cause of action does not identify the subject of the declaratory relief the plaintiffs' seek. Nor does it identify the " 'issues' " or the parties' respective positions.

**B.** **District fails to establish that the challenged causes of action arise from protected activity.**

Regarding the causes of action that were asserted against all defendants, the District makes the same conclusory argument that its motion should be granted because the only allegations against the individual defendants are the purported protected activity of pursuing internal investigations, placing defendants on leave, and making comments at Board meetings. The District again makes no effort to explain the elements of the challenged causes of action and how the allegations referring to the individual defendants are the basis for the challenged causes of action. The District's conclusory argument is without merit for the same reasons discussed *ante*, regarding the individual defendants' motions.[19]

---

[19] The District acknowledges, "Plaintiffs also offer a few allegations of nonprotected activity to support a few of those causes of action," without explaining which causes of action or allegations they are referencing other than stating, "For example, Plaintiff Parenti alleges that he was unlawfully terminated." It then claims "an entire cause of action arises out of protected activity as long as one of the alleged acts does" and cites to *Salma v. Capon* (2008) 161 Cal.App.4th 1275 for the proposition: "A mixed cause of action arises from protected activity as long as 'at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity.'" This is no longer an accurate statement of the law following the California Supreme Court decisions in *Baral v. Schnitt* (2016) 1 Cal.5th 376 and *Bonni, supra*, 11 Cal.5th 995, which address anti-SLAPP motions involving mixed causes of action that rest on allegations of protected and unprotected acts. As explained in *Bonni*: "If a cause of action contains multiple claims and a moving party fails to identify *how* the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims." (*Bonni, supra*, 11 Cal.5th at p. 1011, italics added.) Here, the defendants moved to strike entire causes of action and have failed to meet their burden to identify how their purported protected activity is the basis for any of the challenged causes of action or any of the claims for relief within the causes of action.

The District also fails to meet its burden to demonstrate that the basis for the three challenged causes of action asserted solely against the District arise out of protected activity. The District argues that the seventh cause of action for discrimination arises out of protected activity because it alleges the plaintiffs were subject to internal investigations and placed on leave. It correctly argues that internal investigations of public employees are " 'official proceedings' " under section 425.16 and that statements made in connection with the investigation are protected. However, it fails to identify any statements made regarding the investigation that are the basis for the cause of action. (*Verceles v. Los Angeles Unified School Dist., supra*, 63 Cal.App.5th at p. 788 ["In the absence of any oral or written statements from which [plaintiff's] claims arise, the District's decisions to place [plaintiff] on leave and terminate his employment are not protected activity within the meaning of section 425.16, subdivision (e)(2), even if those decisions were made in conjunction with an official proceeding"].)

Regarding the 10th cause of action for negligent hiring, the District refers to allegations that "the BPPD's commissioners, who were vocal about their discontent with the fact that Plaintiffs' whistleblowing efforts led to the resignation of Connolly, promoted Tobin to become the interim Chief of Police" and that "[v]irtually immediately after Tobin and Banta assumed their new roles their primary agenda item appears to be to retaliate against Khedr and Husain by launching new internal affairs investigations after all prior investigations appeared to fail." The District further asserts that the plaintiffs allege the District was negligent in voting to hire Connolly and that voting on District matters is a protected activity. The District concludes, with minimal analysis, that the negligence cause of action arises from protected activity. We disagree.

33

As to the voting issue, the FAC alleges that "Connolly forced the Board to vote for Connolly to become the next Chief of the BPPD, in violation of conflict-of-interest statutes" and then goes on to allege Connolly's ethical breaches. The negligent hiring cause of action is asserted against the District, not the Board, and it focuses on Connolly's actions as chief of police, including the hiring of Banta and Nelson, among others, without adequately investigating their backgrounds. The District has not established that the negligent hiring cause of action arises out of either voting activity, internal investigations of the plaintiffs, or comments Board members allegedly made at Board meetings. (*Bonni, supra*, 11 Cal.5th at p. 1011.)

The District argues that the 14th cause of action for declaratory relief alleges "the controversy is based, at least in part, on the District launching internal affairs investigations into Plaintiffs, placing Plaintiffs on administrative leave during those investigations and ordering them to sit for investigative interviews" and, therefore, the cause of action arises from protected activity. As discussed *ante*, decisions to place the plaintiffs on leave are not protected activity in the absence of oral or written statements that provide the basis of a plaintiff's claim. (*Verceles v. Los Angeles Unified School Dist., supra*, 63 Cal.App.5th at p. 788.) Moreover, as the trial court correctly found, the FAC's declaratory relief cause of action does not identify any specific controversy between the parties or allege that such controversy is a proper subject of declaratory relief. While the declaratory relief cause of action may be subject to attack by demurrer, the District has failed to establish that it is based upon protected activity under section 425.16.

In sum, we agree with the trial court that the defendants failed to make a threshold showing that the challenged causes of action arise from protected activity. Accordingly, the burden does not shift to the plaintiffs to

34

demonstrate that their claims have at least minimal merit and we need not reach the second prong of the anti-SLAPP analysis. (*Baral v. Schitt, supra*, 1 Cal.5th at p. 396 [only "[i]f the court determines that relief is sought based on allegations arising from activity protected by the statute" is the "second step . . . reached"].)

## DISPOSITION

The trial court's orders are affirmed. The plaintiffs shall recover their costs on appeal.

Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.

A164200/*Parenti v. Broadmoor Police Protection Dist.*